UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| MICHAEL GILMORE, M.D., | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| vs. | ) Case No. 4:22 CV 1008 JMB |
| | ) |
| WASHINGTON COUNTY MEMORIAL | ) |
| HOSPITAL, MERCY HOSPITAL | ) |
| JEFFERSON, MICHELE MEYER, JENIFER | ) |
| FERGUSON, and ANNA MARLER, | ) |
| | ) |
| Defendants. | ) |

**MEMORANDUM AND ORDER**

This matter is before the Court Defendants Washington County Memorial Hospital, Michele Meyer, Jenifer Ferguson, and Anna Marler's Motion to Dismiss (Doc. 15). Plaintiff Michael Gilmore, M.D. filed a response in opposition (Doc. 24) to which Defendants'[1] replied (Doc. 25). For the reasons set forth below, the Motion is **GRANTED in part and TAKEN UNDER ADVISEMENT in part.**

**Background**

According to the Complaint (Doc. 1), Plaintiff Michael Gilmore, M.D., was employed as the chief of medical staff at the Washington County Memorial Hospital (WCMH) during the COVID-19 pandemic. He alleges that he began treating his patients infected with COVID-19 with the drug Bamlanivimab, which was not "specifically authorized for treating such patients" by the Food and Drug Administration (Doc. 1, ¶ 8). He treated four such patients in November

---

[1] Defendant Mercy Hospital Jefferson has not joined the motion.

Page **1** of **16**

2020, achieving some efficacious results in two patients, but no adverse effects. He attempted to treat a fifth patient ("Patient 5") with Bamlanivimab shortly after Thanksgiving that year.

He was not able to treat Patient 5 as he intended because WCMH administration suspended the use of Bamlanivimab for COVID-19 infections a number of days prior (Doc. 1, ¶ 59). As such, WCMH's Chief Nursing Officer (CNO), Jenifer Ferguson, reversed the Bamlanivimab order and, along with Charge Nurse Anna Marler, "falsely communicated to the patient and patient's family that the Bamlanivimab treatment was dangerous and they falsely indicated that Dr. Gilmore's prescription violated FDA guidelines" (Doc. 1, ¶ 14).[2] This action was approved by WCMH's Chief Executive Officer (CEO), Michele Meyer.[3] In speaking to Patient 5 and his family, Plaintiff alleges that Ferguson and Marler made defamatory statements and interfered with the physician/patient relationship (Doc. 1, ¶¶ 74-75). Meyer and Ferguson then contacted Defendant Rural Physicians Group – Pannu LLP (RPG), which employed Plaintiff and contracted him out to the Hospital pursuant to a "Physician Employment Agreement," and demanded that they fire him for failing to comply with WCMH policy regarding Bamlanivimab (Doc. 1, ¶ 17, 37-38). The WCMH and RPG then fired Plaintiff, ostensibly for failing to comply with WCMH policy regarding personal protective equipment (PPE) (Doc. 1, ¶ 22).

Based on the foregoing, Plaintiff states eight grounds for relief, the first five based on 42 U.S.C. § 1983. In Count I, he alleges a "Class of one" discrimination claim against all Defendants; in Count II, he alleges a substantive due process claim as to the "right to medical

---

[2] Plaintiff alleges that Jessica Stacey, WCMH's Director of Quality and Risk Management, acted in concert with Nurse Marler and CNO Ferguson to interfere with his treatment decisions as to Patient 5 (Doc. 1, ¶¶ 71-73). Stacey has since been dismissed (Doc. 41) from this lawsuit upon Plaintiff's request (Doc. 39).

[3] Plaintiff alleges that Meyer is employed by Mercy Hospital Jefferson which has a "management agreement" with WCMH (Doc. 1, p. 30).

privacy & exercise of independent medical judgment"; in Count III, he alleges another substantive due process claim for "egregious government misconduct"; in Count IV, he alleges retaliation for "expressive conduct"; and in Count V, he alleges a "stigma plus" defamation due process claim.  Each of these claims are alleged against each Defendant.  As to his state law claims, he alleges slander in Count VI and tortious interference with business expectancy in Count VII against all Defendants, and breach of contract in Count VIII against WCMH only.

Prior to filing the Complaint in this case, Plaintiff filed a First Amended Petition ("State Complaint") in the Circuit Court of Washington County, Missouri, in which he made similar factual allegations to the ones alleged in this case.[4]  In that State Complaint, Plaintiff alleges that he was employed by WCMH in its clinic and later was employed by RPG as a hospitalist (Doc. 13-2).  He alleges that he attempted to treat Patient 5 with Bamlanivimab, that his treatment decisions were overruled, and that he was terminated because of an alleged and false assertion that he violated the PPE policy.  He alleges claims of defamation (2 counts), tortious interference with patient contract, tortious interference with RPG contract, and breach of contract as to his employment contract with WCMH.  Plaintiff voluntarily dismissed (without prejudice) all of these claims except for breach of contract (Doc. 13-3).  The breach of contract claim in the State Complaint is nearly identical to the breach of contract claim made in Count VIII in the complaint before this Court.

## **Standard**

The purpose of a motion to dismiss for failure to state a claim is to test the legal sufficiency of the complaint.  To survive a motion to dismiss pursuant to Rule 12(b)(6), "a

---

[4] Defendants attached the state court pleading to their motion, of which the Court may take judicial notice.  Stutzka v. McCarville, 420 F.3d 757, 760 n.2 (8th Cir. 2005).

complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 570 (2007)). A claim for relief "must include sufficient factual information to provide the 'grounds' on which the claim rests, and to raise a right to relief above a speculative level." Schaaf v. Residential Funding Corp., 517 F.3d 544, 549 (8th Cir. 2008) (quoting Twombly, 550 U.S. at 555 & n.3). This obligation requires a plaintiff to plead "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." Twombly, 550 U.S. at 555.

On a motion to dismiss, the Court accepts as true all of the factual allegations contained in the complaint, even if it appears that "actual proof of those facts is improbable," and reviews the complaint to determine whether its allegations show that the pleader is entitled to relief. Id. at 555-56; Fed. R. Civ. P. Rule 8(a)(2). However, the principle that a court must accept as true all of the allegations contained in a complaint does not apply to legal conclusions. Iqbal, 556 U.S. at 678 ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."); Rossi v. Arch Insurance Company, 60 F.4th 1189, 1193 (8th Cir. 2023) ("We are not bound to accept as true a legal conclusion couched as a factual allegation, and factual allegations must be enough to raise a right to relief above the speculative level" (quotation marks and citation omitted)).

"If, on a motion under Rule 12(b)(6) . . . matters outside the pleadings are presented to and not excluded by the court, the motion must be treated as one for summary judgment under Rule 56." Fed. R. Civ. P. 12(d). "Though 'matters outside the pleadings' may not be considered in deciding a Rule 12 motion to dismiss, documents necessarily embraced by the complaint are not matters outside the pleading." Zean v. Fairview Health Servs., 858 F.3d 520, 526 (8th Cir.

2017) (citation omitted). Materials embraced by the complaint include "documents whose contents are alleged in a complaint and whose authenticity no party questions, but which are not physically attached to the pleadings." Ashanti v. City of Golden Valley, 666 F.3d 1148, 1151 (8th Cir. 2012) (quotation omitted). Thus, "[i]n a case involving a contract, the court may examine the contract documents in deciding a motion to dismiss." Stahl v. U.S. Dep't of Agric., 327 F.3d 697, 700 (8th Cir. 2003). Stated more comprehensively, courts may consider "matters incorporated by reference or integral to the claim, items subject to judicial notice, matters of public record, orders, items appearing in the record of the case, and exhibits attached to the complaint whose authenticity is unquestioned; without converting the motion into one for summary judgment." Zean, 858 F.3d at 526 (quoting Miller v. Redwood Toxicology Lab, Inc., 688 F.3d 928, 931 & n.3 (8th Cir. 2012) (internal quotation and citation omitted)). The only material outside of the pleadings considered by the Court are Plaintiff's state court filings, which are public records.

## Discussion

I.   Count I – Class of One Discrimination

In this claim, Plaintiff alleges that Defendants[5] "intentionally and arbitrarily" discriminated against him by "procuring the termination of his contract with RPG" for violations of the PPE policy when other independent contractors also violated the policy, as did his replacement, and were not terminated. Defendants argue that class of one discrimination

---

[5] There does not appear to be any dispute, at this stage of the proceedings, that WCMH is a "person" that may be subject to suit pursuant to 42 U.S.C. § 1983. See Beedle v. Wilson, 422 F.3d 1059, (finding that a "public trust hospital" is a governmental entity for § 1983 purposes). As such, the Court has made no determination as to whether WCMH or the individual Defendants are subject to liability under § 1983. See Johnson v. Outboard Marine Corp., 172 F.3d 531, 536 (8th Cir. 1999) (outlining forms of § 1983 liability and stating that a complaint must specify whether an individual is being sued in his official or individual capacity in such lawsuits).

claims are not possible in public employment contexts, citing Engquist v. Or. Dep't. of Agric., 553 U.S. 591 (2008).

A successful class of one claim alleges that a plaintiff "has been intentionally treated differently from others similarly situated and that there is no rational basis for the difference in treatment." Village of Willowbrook v. Olech, 528 U.S. 562, 1074 (2000). In stating such a claim, a plaintiff must provide "a specific and detailed account of the nature of the preferred treatment of the favored class" and allege that the other similarly situated individuals are "identical or directly comparable" to the plaintiff "in all material aspects." Higgins Electric, Inc. v. O'Fallon Fire Protection District, 813 F.3d 1124, 1129 (8th Cir. 2016) (quotation marks and citations omitted). In Engquist, the plaintiff was employed by the Oregon Department of Agriculture and alleged that her position was eliminated, not for the stated purpose of reorganization, but for arbitrary and vindictive reasons. 553 U.S. at 595. The plaintiff argued that the Equal Protection Clause protects public employees from irrational treatment regardless of membership in a protected class, just as it protects individuals from irrational government action in the regulatory context, as in Olech. Id. at 597. Thus, there must be some rational basis, plaintiff argued, for public employment action. Id. The Supreme Court disagreed, stating that "[w]e hold that such a 'class-of-one' theory of equal protection has no place in the public employment context." Id. at 594. In deciding, the Court drew a distinction between the government acting as a regulator and as an employer, the later having "significantly greater leeway in its dealings with citizen employees." Id. at 599. And, the Court noted that "[a]s we explained, absent the most unusual circumstances, a federal court is not the appropriate forum in which to review the wisdom of a personnel decision taken by a public agency allegedly in reaction to the employee's behavior." Id. at 600 (citation and quotation marks omitted).

Defendants argue that Count I is a public employment scenario governed by Engquist and therefore barred. Plaintiff argues, however, that his claim is not barred because he is an independent contractor and he is merely alleging that Defendants interfered with his employment (or independent contractor contract) with RPG. The Court is not convinced. Engquist explicitly excluded class-of-one claims from the "public employment context" based on the concept that "there is a crucial difference, with respect to constitutional analysis, between the government exercising the power to regulate or license, as lawmaker, and the government acting as proprietor, to manage its internal operation." Id. at 598 (citation, quotation marks, and editing marks omitted). Plaintiff has pointed out no functional or substantial difference between an employee and an independent contractor (who functions as an employee) that would remove an independent contractor from the reasoning in Engquist. See, e.g., Board of County Com'rs, Wabaunsee County, Kan. v. Umbehr, 518 U.S. 668, 674 (1996) (stating in a First Amendment termination context that "[t]he similarities between government employees and government contractors with respect to this issue are obvious"). Plaintiff has pointed out no case authority, and the Court has found none, that suggests that he has a legally viable class-of-one claim in light of the holding in Engquist. Indeed, "Engquist underscores the importance of context in determining whether the alleged intentional disparate treatment is actionable or rather a permissible exercise of discretion." Mathers v. Wright, 636 F.3d 396, 400 (8th Cir. 2011). In this case, both direct employment and employment of an independent contractor implicate the same context. Accordingly, Plaintiff has failed to state a claim as to Count I.

II.      Counts II and III – Substantive Due Process Regarding Exercise of Medical Judgment and Egregious Government Misconduct

Plaintiff alleges that "the defendants' conduct aforesaid constituted their deliberate, concerted action to punish Dr. Gilmore for his exercise of his and his patients' complementary federal Due Process rights to privacy in medical decision making" (Doc. 1, ¶ 142). He further alleges that Defendants' conduct "was egregious and conscience-shocking in that it indicates deception and dishonesty, unfair discrimination, ill will and malice, abuse of power, and deliberate intent to punish and harm Dr. Gilmore in his professional and personal reputation and in his livelihood" (Doc. 1, ¶ 146). Defendants argue that there is no case authority supporting such causes of action.[6]

As a general principle, substantive due process concerns the justification for the deprivation of a fundamental right, i.e., life, liberty, or property, by the government. From the Complaint, the right Plaintiff is asserting is both his right to exercise medical judgment and his patient's right to medical privacy, perhaps relying on the concept that "[t]he protections of substantive due process have for the most part been accorded to matters relating to marriage, family, procreation, and the right to bodily integrity." Albright v. Oliver, 510 U.S. 266, 272 (1994). To state a substantive due process claim, "a plaintiff must demonstrate that a fundamental right was violated and that the official's conduct shocks the conscience." Mitchell v. Dakota County Social Services, 959 F.3d 887, 898 (8th Cir. 2020). Whether conduct shocks the conscience is a matter of law and "only includes the most severe violations of individual rights that result from the brutal and inhumane abuse of official power." Id. (quotation marks and citation omitted); Slusarchuk v. Hoff, 346 F.3d 1178, 1182-1183 (8th Cir. 2003) (stating that a "substantive due process plaintiff must demonstrate both that the official's conduct was

---

[6] Defendants first argue that Plaintiff's claims are implausible and speculative because, in part, of a letter Plaintiff received regarding his employment status. The Court has not considered this document because it is not part of any pleading and interjects factual matter that is not appropriate at this stage of the proceedings.

conscience-shocking, and that the official violated one or more fundamental rights that are deeply rooted in this Nation's history and tradition, and implicit in the concept of ordered liberty, such that neither liberty nor justice would exist if they were sacrificed").

Relying on Roe v. Wade, 410 U.S. 113 (1973), Dobbs v. Jackson Women's Health Organization, __ U.S. __, 142 S.Ct. 2228 (2022), and a 1982 treatise, Plaintiff argues that a physician's right to exercise medical judgment is a fundamental right, implicated by the right to privacy, and that Defendants' interference in the same shocks the conscience. Plaintiff's reliance is misplaced. Dobbs explicitly indicates that the decision "concerns the constitutional right to abortion and no other right" and overturned both Roe and Planned Parenthood of Southeastern Pa. v. Casey, 505 U.S. 833 (1992). 142 S.Ct. at 2239. None of those cases squarely address the right Plaintiff advocates in his Complaint. Defendants argue that no court has recognized substantive due process rights in the context advocated by Plaintiff. The Court agrees and finds, as a matter of law, that Plaintiff fails to state a claim.

Plaintiff essentially argues that Defendants interfered with his ability to treat a patient in the manner he saw fit, that they in turn poisoned his patient's mind against him, and that they employed tactics to tarnish his professional reputation. Plaintiff has not alleged that a fundamental right was infringed by Defendants' actions; he has presented no case authority that would support his cause of action; and the cases he cite do not apply to his claims. See Collins v. City of Harker Heights, Tex., 503 U.S. 115, 125 (1992) (stating that "the Court has always been reluctant to expand the concept of substantive due process because guideposts for responsible decision-making in this unchartered area are scarce and open-ended"); See also In re Robertson, 2022 WL 683404 (D.C. Cir. 2022) (finding that an attorney had no substantive due process right in being a member of the bar or preventing an "unduly harsh disbarment").

In addition, none of the conduct described by Plaintiff rises to the level of conscious-shocking. See County of Sacramento v. Lewis, 523 U.S. 833, 849 (1998) (stating that "conduct intended to injure in some way unjustifiable by any government interest is the sort of official action most likely to rise to the conscience-shocking level"). Instead, Plaintiff seeks to elevate what is essentially an employment dispute to the constitutional level. Collins, 503 U.S. at 128. He simply alleges that he engaged in a course of treatment that his superiors believed was inappropriate and he was fired as a result. That is an employment dispute, not a constitutional claim, and not a scenario that shocks the conscience. Accordingly, Plaintiff fails to state a claim as to Counts II and III.

III.  Count IV – Retaliation for Expressive Conduct

Plaintiff alleges that "he objected to various off-label treatment options being placed off limits" in the treatment of COVID-19 and advocated more aggressive treatment to various "Medical Staff of WCMH and its administration" (Doc. 1, ¶ 150). He claims that this "expressive conduct," which included prescribing Bamlanivimab, was "related to a matter of public interest" (Doc. 1 ¶¶ 152 and 153). And, he further claims that Defendants' interference with his prescribed course of treatment and the subsequent termination of his employment was in retaliation for his expressive conduct (Doc. 1, ¶ 155). Defendants argue that Plaintiff did not engage in First Amendment conduct and that any action as a result could not have been in retaliation.

"To establish a First Amendment retaliation claim, a plaintiff must show that (1) he engaged in a protected activity, (2) the government official took adverse action against him that would chill a person of ordinary firmness from continuing in the activity, and (3) the adverse action was motivated at least in part by the exercise of the protected activity." Rinne v. Camden

County, 65 F.4th 378, 381 (8th Cir. 2023) (quotation marks and citation omitted).  Defendants' arguments concern the first element, engagement in protected activity.  They argue that any activity Plaintiff engaged in was merely him doing his job.  As set forth recently by the Eighth Circuit, if Plaintiff was acting as a private citizen, and not a public employee, then "his speech may be protected by the First Amendment."  Bresnahan v. City of St. Peters, 58 F.4th 381, 384 (8th Cir. 2023).  If, however, "a public employee speaks on a matter of public concern pursuant to his official duties, the speech is unprotected against employer retaliation."  Nagel v. City of Jamestown, North Dakota, 952 F.3d 923, 929 (8th Cir. 2020) (quotation marks, emphasis, and citation omitted).  In this case, Plaintiff alleges that he spoke up about WCMH's COVID-19 treatment protocols to other hospital staff (i.e. not with the public at large) and that he treated patients with a disapproved drug during the regular course of his employment.  To the extent that these activities are speech, they were done in the regular course of his employment and pursuant to his job duties; as such, they are not protected speech.  Bresnahan, 58 F.4th at 384; Mogard v. City of Milbank 932 F.3d 1184, 1189-1190 (8th Cir. 2019) (stating that speech may be pursuant to job duties even if they are not a part of job duties); Groenewold v. Kelley, 888 F.3d 365, 371 (8th Cir. 2018) ("A public employee's speech is pursuant to his employment duties if it is part-and-parcel of the employee's concerns about his ability to properly execute his duties.  The First Amendment does not protect a public employee's speech if it owes its existence to his professional responsibilities." (quotation marks and citations omitted)).

Plaintiff nonetheless argues that his prescription of Bamlanivimab to his patients was expressive conduct during the unique and tumultuous global pandemic.  He cites to no case authority to support this proposition, and the Court has found none.  As Defendants point out, "not all conduct is protected speech simply because the person engaging in it intends thereby

to express an idea." Adam and Eve Jonesboro, LLC v. Perrin, 933 F.3d 951, 957 (8th Cir. 2019) (quotation and editing marks and citation omitted). Plaintiff's complaint fails to set forth any allegation that he intended his prescription to be communicative, that it was reasonably understood to be communicative, or indeed that the First Amendment applies. Id at 957. At most, Plaintiff alleges that, during the course of his employment, he objected to treatment policies, he unknowingly prescribed medication in violation of those policies, and he was fired as a result. He fails to state a First Amendment retaliation claim.

VI.     Count V – Stigma Plus Defamation

Plaintiff alleges that Marler's communications with Patient 5 and his family, which were made in collusion with Ferguson and Stacey and ratified by Meyer, were false, placed Patient 5 at risk of harm, and was intended to and did damage his personal and professional reputation (Doc. 1 ¶¶ 161-164). Defendants argue that no false statement is alleged in the Complaint, that his employment was not terminated, and that he consequently fails to state a claim. In response, Plaintiff does not address Defendants arguments; rather, he seeks to amend his complaint to "consider additional allegations with respect to defendants' defamatory conduct in connection with suborning the termination of Dr. Gilmore's retention by RPG" (Doc. 24, p. 12).

In Paul v. Davis, 424 U.S. 693 (1976), the Supreme Court discussed state action that could damage the reputation of an individual through defamatory statements. The Court held that "defamatory publications, however seriously they may have harmed respondent's reputation, did not deprive him of any 'liberty' or 'property' interests protected by the Due Process Clause" and that respondent therefore failed to state a claim. Id. 712. Accordingly, "[a] government employee is entitled to procedural due process only when he has been deprived of a constitutional protected property or liberty interest." Winegar v. Des Moines Independent

Community School Dist., 20 F.3d 895, 899 (8th Cir. 1994).  In order to demonstrate a protected liberty interest, Plaintiff must "establish that a city official, in connection with discharging [him], publicly made allegedly untrue charges against [him] that would stigmatize [him] so as to seriously damage [his] standings and associations in [the] community, or foreclose [his] freedom to take advantage of other employment opportunities."  Shands v. City of Kennett, 993 F.2d 1337, 1347 (8th Cir. 1993).  Failure to allege each element results in dismissal for failure to state a claim.  Brown v. Simmons, 478 F.3d 922, 923-924 (8th Cir. 2007).

The Complaint alleges that Marler, as instructed by Ferguson, falsely told Patient 5 that Bamlanivimab was prescribed in violation of FDA guidelines, that Plaintiff violated hospital policy, that the drug was not safe, and that Plaintiff placed his health at risk (Doc. 1, ¶ 74).  However, there is no allegation that these statements were made in connection with discharging Plaintiff, that it seriously damaged his reputation in the community, or that he was foreclosed from taking advantage of other employment opportunities.  Finally, there is no allegation that he was denied appropriate process.  Brown, 478 F.3d at 923 ("Defaming a governmental employee's reputation, good name, honor, or integrity in connection with terminating the employee, without giving the employee a name-clearing hearing, is a deprivation of the employee's constitutionally protected liberty interest.").  As such, Plaintiff has failed to state a stigma plus due process claim.

In his response, Plaintiff seeks leave to file an amended complaint to make additional allegations that would support this claim.  While leave to amend should be freely given, in this case and based on the filings before the Court it would appear that an amendment would be futile because Plaintiff has not identified what he might allege to support this claim.  Instead, the Complaint contains contrary allegations that any defamatory statements were not made in

connection with the termination of his employment and there is no suggestion that he was prevented from seeking other employment as a result of the statements. It is within the district court's discretion to deny amendment if there is "undue delay, bad faith, or dilatory motive, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the non-moving party, or futility of the amendment." Reuter v. JAX Ltd., Inc., 711 F.3d 918, 922 (8th Cir. 2013) (quotation marks and citation omitted). In this matter, amendment would be futile.

VII. Counts VI-VIII – State law claims of slander, tortious interference with a business expectancy, and breach of contract.

Typically, a district court may decline to exercise supplemental jurisdiction over state claims if "the district court has dismissed all claims over which it has original jurisdiction." 28 U.S.C. § 1367(c)(3). The decision to exercise supplemental jurisdiction after claims over which the Court has original jurisdiction have been dismissed is reviewed for an abuse of discretion. Thompson v. Kanabec County, 958 F.3d 698, 708 (8th Cir. 2020). The Eighth Circuit has stated that "[i]n the usual case in which all federal-law claims are eliminated before trial, the balance of factors to be considered under the pendent jurisdiction doctrine—judicial economy, convenience, fairness, and comity—will point toward declining to exercise jurisdiction over the remaining state-law claims." Barstad v. Murray Cty., 420 F.3d 880, 888 (8th Cir. 2005) (quoting Carnegie-Mellon Univ. v. Cohill, 484 U.S. 343, 350 n.7 (1988)). Gregoire v. Class, 236 F.3d 413, 419-20 (8th Cir. 2000) ("When state and federal claims are joined and all federal claims are dismissed on a motion for summary judgment, the state claims are ordinarily dismissed without prejudice to avoid needless decisions of state law...as a matter of comity.") (quotation marks omitted).

In this case, however, Defendant Mercy Hospital Jefferson has not sought dismissal of the federal claims against it.  In his complaint, Plaintiff alleges that Mercy Hospital Jefferson employs Meyer, that it maintains management contracts with WCMH, and that it is being "sued directly in that its duly authorized agents, to whom Meyer reported, authorized, approved, and/or ratified the Meyer's wrongful acts herein alleged and/or otherwise did so under color of state law" (Doc. 1, ¶ 30).  Plaintiff make no specific allegations against Mercy Hospital Jefferson and instead lumps it together under the umbrella of "all defendants" in making his claims.  Plaintiff appears to be asserting a *respondeat superior* claim against Mercy Hospital Jefferson; however, an employer cannot be held liable under § 1983 merely because it employs a tortfeasor.  Monell v. Dep't. of Soc. Serv. of City of New York, 436 U.S. 658, 691 (1978).  As such, and in light of the foregoing, the Court would find that Plaintiff has failed to state a claim (as to the federal claims) against Mercy Hospital Jefferson.  Accordingly, Plaintiff will be ordered to show cause why Counts I-V should not be dismissed for failure to state a claim as to Mercy Hospital Jefferson.  Thereafter, the Court will consider whether to retain supplemental jurisdiction over the state law claims.

## Conclusion

For the foregoing reasons, Defendants Washington County Memorial Hospital, Michele Meyer, Jenifer Ferguson, and Anna Marler's Motion to Dismiss (Doc. 15) is **GRANTED in part and TAKEN UNDER ADVISEMENT in part.**

**IT IS HEREBY ORDERED:**

1. The Motion to Dismiss is **GRANTED** as to Counts I-V (federal claims) against Defendants Washington County Memorial Hospital, Michele Meyer, Jenifer Ferguson,

        and Anna Marler.  Those claims are **DISMISSED with prejudice** for failure to state a claim.

2.     The Motion to Dismiss is **TAKEN UNDER ADVISEMENT** as to Counts VI-VII (state law claims) against Defendants Washington County Memorial Hospital, Michele Meyer, Jenifer Ferguson, and Anna Marler.

3.     Plaintiff is **ORDERED** to **SHOW CAUSE**, in writing and within fourteen (14) days of the date of this Order, why Counts I-V against Defendant Mercy Hospital Jefferson should not be dismissed for failure to state a claim.  Defendant Mercy Hospital Jefferson is granted leave to respond to Plaintiff's filing within seven (7) days.

4.     The Rule 16 Conference set for June 28, 2023 is hereby **VACATED** and will be reset, if necessary, at a later date.

                                            */s/ John M. Bodenhausen*
                                            JOHN M. BODENHAUSEN
                                            UNITED STATES MAGISTRATE JUDGE

Dated this 22nd day of June, 2023